IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MELISSA J. CAVILLE,            )
                               )
          Plaintiff,           )
                               )
     v.                        )   Civil Action No. 18-1657
                               )
NANCY A. BERRYHILL, ACTING     )
COMMISSIONER OF SOCIAL SECURITY, )
                               )
          Defendant.           )

## O R D E R

AND NOW, this 10th day of September, 2019, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 14) filed in the above-captioned matter on April 29, 2019,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 12) filed in the above-captioned matter on March 29, 2019,

IT IS HEREBY ORDERED that said Motion is GRANTED. Accordingly, this matter is hereby remanded to the Commissioner of Social Security ("Commissioner") for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

## I.   Background

Plaintiff Melissa J. Caville protectively filed a claim for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434, on June 9, 2015, claiming that she became disabled on May 27, 2015, due to neck fusion, shoulder pain, migraines, numbness of the hands and left leg, osteoarthritis, depression, anxiety, and restless leg

1

syndrome. (R. 15, 148-49, 167). After being denied initially on September 16, 2015, Plaintiff sought, and obtained, a hearing before an Administrative Law Judge ("ALJ") on September 27, 2017. (R. 29-66, 80-84, 85-86). In a decision dated January 30, 2018, the ALJ denied Plaintiff's request for benefits. (R. 15-24). The Appeals Council declined to review the ALJ's decision on October 19, 2018. (R. 1-3). Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II. **Standard of Review**

Judicial review of a social security case is based upon the pleadings and the transcript of the record. See 42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive'" (quoting 42 U.S.C. § 405(g))); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues, and reviews the ALJ's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate'" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)). However, a "'single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "'Nor is evidence substantial if it is overwhelmed by other evidence—

particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.'" Id.

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period. See Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act. See 20 C.F.R. § 404.1520. In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. See 20 C.F.R. § 404.1520(a)(4)(i). If so, the disability claim will be denied. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. See 20 C.F.R. § 404.1520(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522. If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the Commissioner must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. See 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant meets a

listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work, see 20 C.F.R. § 404.1520(a)(4)(iv), and the claimant bears the burden of demonstrating an inability to return to this past relevant work, see Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his or her former occupation, the evaluation then moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. See 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the ALJ should consider the claimant's RFC, age, education, and past work experience. See id. The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523.

## III.    The ALJ's Decision

In her January 30, 2018 decision, the ALJ found that Plaintiff met the insured requirements of the Social Security Act through December 31, 2020. (R. 17). The ALJ then proceeded to apply the sequential evaluation process when reviewing Plaintiff's claim for benefits. In particular, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the alleged onset date of May 27, 2015. (R. 17). The ALJ also found that Plaintiff met the second requirement of the process insofar as she had several severe impairments, specifically degenerative disc and joint disease, status post fusion surgery, migraines,

4

osteoarthritis of the hands and joints, restless leg syndrome, and obesity (Id.). The ALJ found that several of Plaintiff's alleged limitations did not qualify as severe impairments, including her hypertension, sinusitis, gastroenteritis, depression, and anxiety. (R. 17-18). The ALJ concluded that Plaintiff's impairments did not meet any of the listings that would satisfy Step Three. (R. 18-19).

The ALJ found that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following exceptions:

(1) Plaintiff can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently;
(2) She can sit for 6 hours, stand for 4 hours, and walk for 4 hours, while leaning on a workbench or stool when in the standing position;
(3) She can occasionally reach overhead to the left and right;
(4) She can handle objects with both hands, but is limited to occasional use for fine manipulation;
(5) She can occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds, or kneel or crawl;
(6) She can never work at unprotected heights or around moving mechanical parts;
(7) She can occasionally work in extreme cold and in moderate noise;
(8) She can work where the pace of work is determined by the person, but general production demands are met; and
(9) She would be off-task no more than 15 per cent of the workday.

(R. 19-22). Based on this RFC, Plaintiff established that she is incapable of returning to her past employment; therefore, the ALJ moved on to Step Five. (R. 22).

At Step Five, the ALJ used a vocational expert ("VE") to determine whether or not there were a significant number of jobs in the national economy that Plaintiff could perform. The VE testified that, based on Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, including the representative occupations of routing clerk, ticket taker, and unarmed security guard. (R. 23, 59-60). Accordingly, the ALJ found that Plaintiff was not disabled. (R. 24).

## IV. Legal Analysis

Plaintiff argues that the ALJ erred in assigning little weight to the opinion of Richard Plowey, M.D. (R. 385), her treating physician (and the only medical source to provide a relevant opinion as to her functional limitations), and in formulating her RFC. While the Court does not necessarily find that the ALJ erred in her evaluation of Dr. Plowey's opinion, it does find that she inadequately explained how she determined Plaintiff's RFC. Accordingly, the Court cannot find the ALJ's decision to be supported by substantial evidence and finds that remand is necessary for further consideration and discussion of these issues.

Plaintiff argues that, as the opinion of a treating physician that she contends is consistent with the record, the ALJ should have given great or even controlling weight to Dr. Plowey's opinion is formulating her RFC.[1] She asserts, correctly, that when assessing a claimant's application for benefits, the opinion of the claimant's treating physician generally is to be afforded significant weight. See Fargnoli, 247 F.3d at 43; Plummer, 186 F.3d at 429. In fact, the regulations provide that for claims, such as this one, filed before March 27, 2017, a treating physician's opinion is to be given "controlling weight" so long as the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); Fargnoli, 247 F.3d at 43; Plummer, 186 F.3d at 429. As a result, the ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, and not on the basis of the ALJ's own judgment or speculation, although she may afford a treating physician's opinion more or less weight

---

[1] RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Fargnoli, 247 F.3d at 40. See also 20 C.F.R. § 404.1545(a).

6

depending upon the extent to which supporting explanations are provided. See Plummer, 186 F.3d at 429.

The ALJ here did discuss Dr. Plowey's opinion at significant length and provided reasons for affording the opinion the weight it was given. (R. 22). However, under the circumstances of this case, the Court need not determine whether the ALJ's explanation was adequate and supported by substantial evidence. Although the ALJ's consideration of Dr. Plowey's opinion is clearly relevant in determining the adequacy of her formulation of the RFC, the Court, as discussed herein, finds that, even assuming that proper weight was afforded to Dr. Plowey's opinion, the Court cannot find the ALJ's RFC determination to be supported by substantial evidence.

In formulating a claimant's RFC, not only must an ALJ consider all relevant evidence, the RFC finding "must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli, 247 F.3d at 41 (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)). "'[A]n examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision.'" Id. (quoting Cotter, 642 F.2d at 705). See also S.S.R. 96-8p, 1996 WL 374184 (S.S.A.), at *7 ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."). Here, even assuming that the ALJ was correct in assigning little weight to the functional limitations to which Dr. Plowey opined, she failed to provide a clear and satisfactory explication of the basis on which the RFC findings rested.

As discussed above, the RFC in this case was actually quite extensive and specific. However, while the ALJ discussed the evidence generally in explaining how she determined the RFC, at no point did she specifically indicate how she came to her specific determinations as to Plaintiff's functional limitations. As noted, the ALJ largely rejected the opinion of Dr. Plowey, and, as Plaintiff points out, there were no other medical opinions as to the functional limitations caused by her physical conditions.[2] While in some cases this might not be problematic, here, the combination of the ALJ rejecting Dr. Plowey's opinion, having no other opinion in the record, and failing to provide sufficient specificity in explaining how she herself determined Plaintiff's RFC compels the Court to remand this case for further consideration and discussion.

Plaintiff, citing Keller v. Colvin, No. 3:12-cv-1502, 2014 WL 658064 (M.D. Pa. Feb. 20, 2014), and Gormont v. Astrue, No. 3:11-cv-02145, 2013 WL 791455 (M.D. Pa. Mar. 4, 2013), suggests that since Dr. Plowey's opinion was the only one in the record, the ALJ was essentially required to adopt Dr. Plowey's findings as to Plaintiff's functional limitations because to do otherwise would be to rely on her own lay analysis of raw medical data. However, merely because there was not another medical opinion in the record does not mean that the ALJ was forced to base her RFC determination on an opinion to which she gave limited weight by default. "The ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). See also 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c). Indeed, "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the

---

[2] The state reviewing agent who determined Plaintiff's physical RFC at the initial level (R. 71-73), was a Single Decision Maker ("SDM"), as defined by the SSA, and not a medical source. The opinions of SDMs are generally not afforded any evidentiary weight. See Stewart v. Astrue, Civ. No. 11-338, 2012 WL 5494662, at *5 (E.D. Pa. Nov. 13, 2012); Caine v. Colvin, No. 02:12-cv-791, 2013 WL 967779, at *7 (W.D. Pa. Mar. 12, 2013). The ALJ, therefore, properly disregarded this opinion in determining Plaintiff's RFC.

course of determining an RFC." Titterington v. Barnhart, 174 Fed. Appx. 6, 11 (3d Cir. 2006). See also Chandler, 667 F.3d at 362 (holding that each fact incorporated into the RFC need not have been found by a medical expert). As the Third Circuit Court of Appeals explained in Titterington, "[s]urveying the medical evidence to craft an RFC is part of an ALJ's duties." 174 Fed. Appx. at 11. In fact, an ALJ is permitted to make an RFC assessment even if no doctor has specifically made the same findings. See Hayes v. Astrue, Civ. No. 07-710, 2007 WL 4456119, at *2 (E.D. Pa. Dec. 17, 2007). It was not necessarily error, then, for the ALJ to reject the only relevant medical opinion in the record.

However, as discussed above, in any event, substantial evidence must support an ALJ's findings as to the claimant's RFC, and the ALJ must provide an adequate explanation as to how she formulated the RFC. Here the Court finds the explanation provided to be insufficient to determine whether substantial evidence supports the RFC findings. While the ALJ was not required to adopt the opinions of Dr. Plowey, or to rely expressly on some other opinion, she did have to explain how the evidence supported her RFC findings. It frankly is not clear, simply by reviewing the ALJ's discussion of the evidence, to determine how that evidence translated into the very specific RFC findings made by the ALJ. At the exertional level, for instance, there is no real analysis as to why Plaintiff should not be limited to sedentary work rather than light work or, for that matter, why she could not perform medium work. The determination that she can perform light work seems fairly arbitrary given this lack of discussion. It is not that the record could not be found to support a finding of light work, it is that the ALJ failed to explain with sufficient specificity why this exertional level, and not some other, applied, especially in light of the contrary opinion of Dr. Plowey.

Likewise, the RFC contains numerous nonexertional limitations, and it is not necessarily clear whether the limitations included were restrictive enough, or why they were necessary in the first place. For example, it is not clear where the finding that Plaintiff could stand for 4 hours if she leaned on something came from. Similarly, it is not patently apparent how the ALJ accounted for Plaintiff's migraine headaches in determining her functional capacity. The Court could itself look at the evidence and determine whether it would lead to the conclusions to which the ALJ came, but that is not the Court's role. See Fargnoli, 247 F.3d at 44 n.7 ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.") (quoting SEC v. Chenery Corporation, 318 U.S. 80, 87 (1943)).

The Court is cognizant that an ALJ's decision need not be so comprehensive as to account with meticulous specificity each finding contained therein. Here, though, the ALJ essentially asks the Court to assume that record evidence leads to the very specific conclusions she draws as to Plaintiff's RFC, despite a medical opinion to the contrary. The Court cannot make this assumption, and therefore it will remand the matter so that the ALJ can more clearly explain how she came to her findings. In the course of doing so, she should ensure that she has adequately considered and weighed Dr. Plowey's opinion. She may also want to consider obtaining another opinion, such as that of a consultative examiner, but the Court leave that specific decision to the ALJ on remand.[3]

---

[3] The Court does not reach the issue of whether the ALJ properly evaluated Plaintiff's credibility, especially in light of her long work history. On remand, the ALJ should ensure that proper consideration is given to all relevant factors, including Plaintiff's work history, in evaluating her subjective claims. Moreover, Plaintiff asserts that the ALJ misstated the evidence involving MRIs taken on May 21, 2015. While the Court takes no position on this issue, the ALJ should make sure that all of the medical findings, including the May 2015 MRIs, are considered accurately and appropriately.

## V. Conclusion

In short, the record does not permit the Court to determine whether the findings of the ALJ regarding Plaintiff's RFC are supported by substantial evidence, and, accordingly, the Court finds that substantial evidence does not support the ALJ's decision in this case. The Court hereby remands the case to the Commissioner for reconsideration consistent with this Order.

s/Alan N. Bloch<br>
United States District Judge

ecf:    Counsel of record